## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GINA B.,                          :

     plaintiff.                  :

     v.                          : CASE NO. 3:23-CV-00769-RAR

                                                   :

COMMISSIONER OF                   :
SOCIAL SECURITY,                  :

                                                   :

     defendant.                  :

## RULING ON PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Gina Beauchamp ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405 (g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated November 2, 2022. Plaintiff timely appealed to this Court. Currently pending are Plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. 18) and defendant's motion to affirm the decision of the Commissioner (Dkt. 28). For the following reasons, Plaintiff's motion to reverse, or in the alternative, remand, is GRANTED and the Commissioner's motion to affirm is DENIED.

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled,

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

**PROCEDURAL HISTORY**

Plaintiff initially filed for disability insurance benefits under Title XVI Supplemental Security Income Benefits on July 22, 2020, with an alleged onset date ("AOD") of May 31, 2012. (R. 87).[4]  Plaintiff alleged her ability to work was limited by dislocated discs in neck, spinal injuries, and surgery. (R. 257). The initial application was denied on May 20, 2021, and

---

without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[4] The Court cites pages within the administrative record as "R. ___."

again on reconsideration on October 6, 2021. (R. 93, 100).
Plaintiff filed for an administrative hearing which was held by
Administrative Law Judge Edward Sweeny ("ALJ") on May 4, 2022.
(R. 25). After the hearing, the ALJ issued a written decision
denying plaintiff's application on November 2, 2022. (R. 36).
Plaintiff thereafter sought review by the Appeals Council, which
was denied on April 20, 2023. (R. 1). Plaintiff then timely
filed this action seeking judicial review. (Dkt. #1).

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ
concluded that the plaintiff was not disabled within the meaning
of the Social Security Act from her alleged onset date of May
31, 2012, through the date of the ALJ's decision on November 2,
2022. (R. 36). At step one, the ALJ determined that plaintiff
had not engaged in substantial gainful activity between her
alleged onset date and the date of the ALJ's decision. (R. 28).

At step two, the ALJ found that plaintiff had the following
severe impairments: degenerative disc diseases of the cervical
and lumbar spine, and the following nonsevere impairments:
allergic rhinitis, gastritis, diverticulitis, and major
depressive order. (R. 28).

At step three, the ALJ determined that plaintiff's severe
impairments did not meet or medically equal the severity of a
listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1 (20

C.F.R. 404.1520(d), 404.1525 and 404.1526). (R. 30). The ALJ specifically considered plaintiff's spine disorder under Listing 1.15 pertaining to disorders of the skeletal spine but found "no evidence of nerve root compression or clinical signs of muscle weakness, sensory changes, decreased deep tendon reflexes, or positive straight-leg raising," other than a "questionable," sensory change found at a 2021 consultative examination. Id.; (R. 601). The ALJ found that the record did not reflect a medical need for an assistive device or an inability to complete work-related activities involving fine and gross movements. (R. 30).

At step four, the ALJ found plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work defined in 20 CFR 416.967(c). Id.

Lastly, at step five, the ALJ concluded that plaintiff was able to perform past relevant work as a Milling Machine Tender/Numerical Control Machine Operator as actually performed. (R. 34). Based on the testimony of a vocational expert, the ALJ determined that in addition to past relevant work, there were other jobs that exist in significant numbers in the national economy such as hand packer and kitchen helper that the plaintiff can also perform with her RFC, thus finding plaintiff "not disabled." (R. 35).

## **DISCUSSION**

Plaintiff argues that the ALJ failed to support his RFC determination with substantial evidence because he failed to provide legally sufficient explanations for determining the persuasiveness of the medical opinions, failed to reconcile the consistency of similar opinions, and failed to create a logical bridge between the evidence and the evaluation of the medical opinions. (Dkt. 18-1 at 1). The Commissioner responds to the claims of error by generally arguing that all of the ALJ's determinations are supported by substantial evidence. (Dkt. 28-1 at 1). Based on the following, the Court GRANTS plaintiff's motion for remand.[5]

### I.   **The ALJ's Evaluation of the Medical Opinion Evidence.**

Plaintiff asserts that the ALJ failed to articulate his reasoning for finding the medical opinions of State agency consultants Dr. Connolly and Dr. Cylus persuasive based upon consistency and supportability as required by the regulations. (Dkt. 18-1 at 8).

---

[5] Plaintiff makes a passing argument that she would be entitled to disability benefits due to the fact that she turned 55 while the claim was pending; however, she was newly 54 at the time of application, placing her strictly in the "approaching advanced age" category. 20 C.F.R. § 416.963.

For claims filed on or after March 27, 2017, an ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's] medical sources." 20 C.F.R. § 416.1520c(a). The ALJ must consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he or she considered the "supportability" and "consistency" factors in the evaluation, but need not explain how he or she considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b).

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). For the "consistency"

factor, "[t]he more consistent a medical opinion(s) or prior
administrative finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative
finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).
Additionally, ALJs should still consider that "[u]nder The Code
of Federal Regulations, [a] medical source may have a better
understanding of your impairment(s) if he or she examines you
than if the medical source only reviews evidence in your
folder.'" Migdalia C. v. Kijakazi, No. 3:21-CV-00592 (RAR), 2022
WL 3368583, at *7 (D. Conn. Aug. 16, 2022) (quoting 20 CFR §§
404.1520c(c)(3)(v), 416.920c(c)(3)(v)).

The ALJ found the medical opinion evidence of plaintiff's
treating sources APRN Thomas and Dr. Shifreen not to be
persuasive and found the opinion of APRN Bansal, a consultive
examiner, partially persuasive.[6] (R. 32-33.) Rather, the ALJ
proceeded to base plaintiff's disability determination on the
medical opinions of two non-examining State agency medical
consultants, Dr. Connolly and Dr. Cylus. (R. 32, 87-100.)
Plaintiff argues generally that the ALJ's assertions regarding
supportability and consistency are overly conclusory and do not

---

[6] The Court notes that there was discussion of other medical opinions related
to plaintiff's mental health impairments in the ALJ's decision.  However, no
argument has been raised regarding those opinions or the ALJ's evaluation of
them.

provide the court with sufficient guidance to conduct a review of the ALJ's ultimate RFC determination.  The Court agrees.

Courts within the Second Circuit have found statements lacking explanation to be insufficient to meet the new requirements.  *See* Melissa S. v. Comm'r Soc. Sec., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) *(*finding remand appropriate where "the ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true[]" and that "[b]road, conclusory statements that an opinion is not consistent with the medical record are inadequate under the Commissioner's regulations.").

The ALJ found Dr. Shifreen's assessments of the claimant's functioning spanning from 2015 to 2022 to be "unpersuasive." (R. 33). The ALJ began with a listing of Dr. Shifreen's findings and restrictions, and then stated that Dr. Shifreen's opinion was not supported by the longitudinal record, which demonstrated "neurologically intact exams, mild radiographic findings, and an unchanged medication regiment for years." (R. 33). The ALJ then concluded that Dr. Shifreen's findings "appear[] to be largely based on the claimant's subjective allegations." (R. 33).

Dr. Shifreen, a musculoskeletal and pain management specialist, treated plaintiff for chronic pain for about seven years. In a report dated May 3, 2022, Dr. Shifreen found that

plaintiff would constantly suffer from pain or symptoms that would interfere with simple task performance; can walk 2-3 yards at a time; can stand or sit for 20 minutes at a time; can occasionally lift 10 pounds but *never* 20 or 50 pounds; would be absent more than 5 days per month; and that plaintiff can rarely stoop or crouch, and occasionally twist. (R. 1359-60). The ALJ does not articulate how these findings are inconsistent with the record, especially given plaintiff's persistent complaints of pain. (R. 52, 505, 600, 1044). Furthermore, Dr. Shifreen's findings are consistent with other treating and examining physicians, including APRN Thomas and APRN Bansal.

Dr. Shifreen's findings regarding plaintiff's functional capacities are, in part, consistent with portions of APRN Bansal's report from March 2021. APRN Bansal saw plaintiff for a consultative examination for spinal injuries and neck issues. (R. 598). APRN Bansal's report, as requested, noted findings of a reported ability to walk one block and ability to lift 10 pounds; an abnormal and slow gait; an inability to rise from squat due to knee pain; an inability to tip toe or walk on heels; a decreased ROM in cervical and lumbar spine; and lack of sensation in arms and legs. (R. 600-02). The ALJ found APRN Bansal's opinion "partially persuasive." (R. 33). The ALJ found it partially unpersuasive because it "does not provide a function-by-function analysis of the claimant's physical

limitations." However, as noted above, APRN Bansal noted plaintiff's abnormal gait and cervical range of motion issues. Nonetheless, the ALJ simultaneously found that APRN Bansal's opinion supported the fact that she does not require an assistive device and that "her subjective statements are not wholly consistent with the objective evidence." Id.  However, it is noteworthy, that APRN Bansal's opinion highlights an abnormal gait and, while not using an assistive device, that plaintiff needed support from her brother and walked slowly when leaving the appointment.  The findings related to gait and ambulation appear to align with Dr. Shifreen's opinion. The ALJ did not clearly identify how APRN Bansal's opinion supports a medium RFC or cite to specific language or evidence in the record to guide the Court regarding the finding of persuasiveness. (R. 33.)

APRN Thomas' findings regarding plaintiff's work abilities also comport with those of Dr. Shifreen. APRN Thomas opined in January 2020 that plaintiff can sit and stand/walk for less than 2 hours each; requires unscheduled breaks; cannot lift any weight throughout the workday; can occasionally turn her head; rarely to never perform postural activities; and would likely be absent 1-4 days per month (R. 406-08). The ALJ found APRN Thomas' opinion unpersuasive, pointing again to "neurologically intact exams, mild radiographic findings, and conservative treatment" in addition to "unremarkable progress notes

documenting *mostly* routine office visits." (R. 33)(emphasis added). The ALJ concluded that APRN Thomas' reported limitations were based mainly on the plaintiff's subjective allegations rather than "clinical or diagnostic findings." (R. 33). However, as with the other persuasiveness findings in the decision, the ALJ did not cite to any specific records to support his conclusions.[7]  Despite conformity between opinions of plaintiff's treating physicians, the ALJ concluded that such opinions are unpersuasive and unsupported by medical evidence without any clear discussion or citation to the parts of the record with which they are inconsistent.

The ALJ repeatedly asserted that "neurologically intact exams, mild radiographic findings, and conservative treatment" support his persuasiveness determination. (R. 32). This conclusory statement is largely unaccompanied by references to medical evidence or specific support in the record. The ALJ did not elaborate on how these factors support his findings that non-examining State agency medical consultants maintain persuasiveness.

Plaintiff's treatment included surgery, long-term use of opiates, and physical therapy. The ALJ found such aspects of

---

[7] As with other references, the ALJ cited to an entire section of treatment records to support his assertion.  (R. 33 citing "B3F") However, the ALJ provided no clear examples or quoted specific findings.

plaintiff's treatment to be "conservative." This finding is at best questionable. In Jazina v. Berryhill, the Court found that the plaintiff Jazina endured physical therapy and powerful prescription opioids such as oxycodone, which do not indicate conservative treatment. Jazina v. Berryhill, No. 16-CV-1470 (JAM), 2017 WL 6453400, at *6 (D. Conn. Dec. 13, 2017). Indeed, in Jazina, the plaintiff did not have surgery like the plaintiff in the instant case, yet the Honorable Jeffrey A. Meyer questioned the classification of their treatment as conservative. Id. Other courts have also found over-the-counter medicine, home exercise programs, acupuncture, and chiropractic care to be indicative of conservative treatment. See Penfield v. Colvin, 563 Fed. Appx. 839, 840 (2d Cir. 2014); Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); Keaton v. Saul, Civ No. 3:19-CV-1487, 2020 WL 5525614 at *10 (D. Conn. Sept.15, 2020). This Court has found that pain management via prescription medications and physical therapy is "extensive treatment . . . not conservative treatment." Keaton, 2020 WL 5525614 at *10. The ALJ's frequent reliance on the characterization of the longitudinal record as showing conservative treatment at least appears to be questionable. At the very least, if the ALJ is going to rely on the statement regarding "conservative" treatment, the ALJ needs to provide the Court with clearer information as to what the treatment was and

why the ALJ has deemed it conservative.  The ALJ should do so with clear and pinpointed citations to records in the case to allow the Court to fully review and assess the evidentiary support for the conclusion.[8]

The ALJ likewise does not point out where in the record the "mild radiographic findings" that the ALJ relied upon to rebut plaintiff's apparently high level of pain are located.  Nor does the ALJ articulate the logical path required to show how this statement plays into the consistency or the supportability of the medical opinions at issue.

Courts in this circuit has held that "[b]road, conclusory statements that an opinion is not consistent with the medical record are inadequate under the Commissioner's regulations." Melissa S. v. Comm'r Soc. Sec., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022). Rather, the ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." Kathleen A. v. Comm'r of Soc. Sec. Admin., No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022). Here, the ALJ did not complete the requisite step of bridging the gap

---

[8] While noting that some courts within the Second Circuit have found similar courses of treatment not to be conservative, the Court reiterates that it is not tasked with evaluating medical evidence. Upon remand the reviewing ALJ might very well reach the same conclusion as the original ALJ but should provide more guidance and support for the conclusion that was reached.

between the medical opinions and their supportability or
consistency. The ALJ repeats, with some occasional variation, a
one sentence conclusory explanation noting "neurologically
intact exams, mild radiographic findings, and conservative
treatment" but the ALJ does not elaborate upon these conclusions
or cite to sufficient and specific evidence in the record for
the reviewing court to verify or confirm the accuracy of the
conclusory explanations. (R. 32.)  Instead, the ALJ's decision
cites to a lengthy exhibit, makes a conclusory statement about
part of the exhibit's contents, and leaves it on the Court to
comb through the exhibit and speculate as to which portion of
the exhibit/medical records the ALJ was probably relying on to
support his or her conclusion.

Similarly, the ALJ's determination that the non-examining
consultative doctors' opinions were supported by and consistent
with the record was overly conclusory. The ALJ's opinion does
not contain substantive analysis of the supportability and
consistency factors with respect to the consultative doctors'
opinions.

Regarding physical impairments, the ALJ's analysis for both
physicians is, in its entirety: "[t]his opinion is consistent
with and supported by the longitudinal treatment record
consistently noting neurologically intact exams, mild
radiographic findings, and conservative treatment." (R. 32).

Without more, this is insufficient. The ALJ does not cite to any medical evidence other than the general opinions of the consultative doctors. Neither the consultative doctors' opinions nor the ALJ's opinion make it clear how the reports of plaintiff's functioning, viewed in context of the record, suggest that plaintiff can stand or walk for six hours in an eight-hour workday. This is particularly concerning given the medical record evidence noting that plaintiff can only walk one block, lift ten pounds, and stand twenty minutes. (R. 600). Once again, the Court does not opine on whether, in fact, the plaintiff could perform the work functions at issue.  Rather, the Court's concern is with the ALJ's articulation of and support for his findings.

In analyzing medical opinion evidence, an ALJ is required to both identify evidence that supports his conclusion and "build an accurate and logical bridge from the evidence to [his] conclusion to enable meaningful review." Janita H. v. Comm'r of Soc. Sec., No. 7:21-CV-05199-GRJ, 2023 WL 196158, at *8 (S.D.N.Y. Jan. 17, 2023) (citing Horton v. Saul, 19-CV-8944, 2021 WL 1199874, at *12 (S.D.N.Y. Mar. 30, 2021)). Remand may be appropriate where an ALJ's conclusory statements regarding supportability "offer no insight into 'how well [either doctor] supported and explained their opinion.'" Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (quoting Vellone v. Saul, No.

120CV00261RAKHP, 2021 WL 319354 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom. Vellone ex rel. Vellone v. Saul, No. 20-CV-261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021)). In this instance, the ALJ did not sufficiently bridge the evidence concerning plaintiff's ROM, chronic pain, walking abilities, and gait with his determination that plaintiff can stand or walk for six hours in a workday. Although it may very well be possible to build a logical bridge with the evidence in the record, it is difficult for the reviewing court to locate or confirm the existence of such a bridge given the overly broad conclusory statements which are not supported by citation to the record to help the reviewing court determine whether support for the conclusions exists in the record.  The conclusory nature of the ALJ's evaluation of the supportability and consistency factors warrants remand, particularly in light of the fact that these two non-examining opinions are the only sources which the ALJ found fully persuasive.

Both consultative doctors based their RFC determinations in part on the records from Dr. Shifreen, APRN Thomas, and APRN. Bansal. (R. 97, 89). APRN Bansal's report details symptoms such as: decreased lumbar and cervical range of motion ("ROM"); abnormal, unstable, slow gait; inability to tiptoe or walk on heels; chronic pain; long term opiate use; lack of sensation in hands and feet; persistent back and leg pain; daily shoulder

18

pain; and needed assistance grocery shipping, cleaning, complex cooking. (R. 89, 600-602).

Despite these findings, Dr. Cylus' RFC explanation details good ROM and gait. The ALJ did not point to any specific evidence in the record to support the findings of Dr. Cylus. Similarly, Dr. Connolly notes plaintiff's decreased ROM, slow gait, narcotic treatment, and neck and leg pain but nonetheless concludes that "recent imaging show[ed] mild findings" and that "[h]er MCE was essentially normal." (R. 92). Contrary to the Commissioner's assertion of routinely normal gait, the record reflects plaintiff's continued struggle with her gait. (Dkt 28-1 at 5); (R. 600, 92). Ultimately, Dr. Connolly found for a medium RFC, however, it is not clear how "mild findings" are evidence of an ability to walk or stand for six hours of an eight-hour workday, and the ALJ did not bridge that gap in his opinion. (R. 92, 32).

Additionally, when viewed in the context of the entire record, the consultative doctors' opinions appear to be in contrast to APRN Bansal's 2021 examination which revealed that plaintiff could walk one block, stand 15-20 minutes, and lift 10 pounds. (R. 600). Other references to plaintiff's ability to walk include APRN Thomas' RFC questionnaire indicating that plaintiff could walk 2 blocks before severe pain; Dr. Shifreen's medical source statement noting that plaintiff's symptoms would

interfere with simple task performance, as plaintiff could walk
2-3 yards or stand for 20 minutes; as well as plaintiff's
testimony that she could walk for two blocks at a time. (R. 406,
54). The findings by consultative doctors limiting plaintiff to
six hours of standing and walking per day are clearly not
aligned with either Dr. Shifreen or APRN Bansal's findings.
While the Court does not determine what plaintiff's ability is
to meet the demands of the work environment, where there is
clear variation between the medical opinions, it is the ALJ's
job to articulate the reasoning behind the findings. Due to this
failure, the Court is constrained to conclude that the error was
not harmless.  It is clear that depending on how the record is
read and evaluated, the ALJ's findings might very well be
appropriate.  "Despite [an] ALJ's procedural error, we could
affirm if a searching review of the record assures us that the
substance of the [regulation] was not traversed." Loucks v.
Kijakazi, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. 2022).

The Court notes that the Commissioner has largely argued
that the findings are supported by substantial evidence and that
the plaintiff is simply asking the court to impermissibly
reweigh the evidence. (Dkt. #28-1 at 4-8.)  A reviewing court
does not "decide the facts anew, nor [] reweigh the facts, nor
[] substitute its judgment for the judgment of the ALJ. Rather,
the decision of the ALJ must be affirmed if it is based upon

substantial evidence even if the evidence would also support a
decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d
81, 87 (D. Conn. 2000).   In this case, the Court is not tasked
with reweighing the evidence.   Indeed, there may, in fact, be
substantial evidence in the record to support the ALJ's RFC
determination, however, the broad and conclusory statements used
by the ALJ, with a lack of clear citation to the record leave
the Court unable to make that determination.   As articulated in
plaintiff's reply brief, the Court's concern relates to the lack
of citation and articulation for the ALJ's findings of
supportability and consistency.   The Commissioner cites to many
pages in the medical record, pointing to them as the support for
the ALJ's determination. (Dkt. #28-1 at 5-7.)   However, that was
the ALJ's task, and counsel for the Commissioner should not be
tasked with filling in gaps later in the process. "It is well
settled that "[a] reviewing court may not accept appellate
counsel's post hoc rationalizations for agency action." Recupero
v. Saul, No. 3:18CV01413(SALM), 2019 WL 2462812, at *5 (D. Conn.
June 13, 2019)(quoting Snell v. Apfel, 177 F.3d 128, 134 (2d
Cir. 1999)).   "The Second Circuit has explained,[] that an ALJ
is not required to use 'magic words' but rather 'explain how
[he] considered the supportability and consistency factors' in
evaluating the persuasiveness of the medical opinion." Simpson
v. Comm'r of Soc. Sec. of United States, No. 22 CIV. 10606

(SLC), 2024 WL 1300443, at *10 (S.D.N.Y. March 26, 2024).  In this case, the ALJ simply has not done so.

The ALJ's decision does not sufficiently articulate how and why the persuasiveness decisions were made. This lack of explanation is particularly concerning since the assignment of persuasion to the non-examining consultative doctors' opinions comprises one sentence. This vague and conclusory statement regarding the decision to assign persuasive weight to the consultative doctors' opinions is legally erroneous.  Having found an error in the ALJ's assignment of persuasive weight, due to the ALJ's failure to build a logical path, it is impossible to determine if the ALJ's RFC finding is properly supported by substantial evidence in the record without the Court impermissibly reweighing the evidence in the record.

The record supports plaintiff's argument that the ALJ erred in articulating the reasons why treating physicians APRN Thomas and Dr. Shifreen's opinions were found unpersuasive and those of the non-examining consultative doctors' opinions were found persuasive.  This error warrants remand.  To be clear, the Court has not opined on the medical evidence, the persuasiveness of the opinions, or the disability status of the plaintiff. Rather, as articulated throughout this ruling, the Court finds that the ALJ must do more than make broad statements about the

record when determining the persuasiveness of the medical source opinions.

**CONCLUSION**

Plaintiff's motion for an order reversing or remanding the Commissioner's decision (Dkt. 18) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. 28) is DENIED.

It is so ordered this 23rd day of September 2024, at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge